UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| DENISE HENDERSON, RHETT R. COOK, and EMMIE R. JAGER, Individually and on Behalf of the Estate of ROCKY LEE COOK, Deceased,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>       Defendant. | Civil Action No. _____ |

## COMPLAINT

Denise Henderson ("Ms. Henderson"), Rhett R. Cook ("Mr. Rhett Cook"), and Emmie R. Jager ("Ms. Jager"), individually and on behalf of the Estate of Rocky Lee Cook, by counsel, state as follows for their Complaint against Defendant:

### Jurisdiction and Venue

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

2. In compliance with 28 U.S.C. § 2675, Plaintiffs filed a notice of administrative claim with the United States Department of Veterans Affairs ("VA"), attached as **Exhibit A**. The administrative claim was received by VA's Office of General Counsel on August 13, 2019.

3. On September 8, 2022, VA denied the administrative claim.

4. On February 28, 2023, Plaintiffs requested VA to reconsider its decision to deny their administrative claim.

5. On May 25, 2023, VA denied Plaintiffs' administrative claim for the second and final time.

1

6. Accordingly, Plaintiffs' causes of action are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because the causes of action at issue in this case arose at the Memphis VA Medical Center ("Memphis VAMC").

8. At all times relevant to this action, the United States owned and operated the Memphis VAMC and its affiliated clinics.

9. At all times relevant to this action, the agents, servants, employees, and personnel of the Memphis VAMC were acting within the course and scope of their employment in providing and/or failing to provide medical care and treatment to Rocky Lee Cook ("Mr. Cook").

10. Mr. Cook was a veteran of the United States Marine Corps, and thus was entitled to medical care and treatment at the Memphis VAMC and its affiliated clinics.

11. Plaintiffs provided the government with timely notice of this federal tort claim by timely filing a formal administrative claim under applicable law. While Plaintiffs do not believe that any additional notice was necessary, Plaintiffs nonetheless complied with the notice requirements outlined in Tenn. Code Ann. § 29-26-121, attached as **Exhibit B**, and as such, this Complaint is timely filed. Moreover, counsel for Plaintiffs is filing a Certificate of Good Faith pursuant to Tenn. Code Ann. § 29-26-122 contemporaneously with this Complaint, attached as **Exhibit C**, confirming that the undersigned has consulted with competent experts who believe that there is a good-faith basis to pursue the claims asserted in this Complaint.

12. The medical care described as follows was provided to Mr. Cook at the Memphis VAMC and its outpatient clinics unless otherwise stated.

## **Allegations**

13. Plaintiffs restate and re-allege paragraphs 1 through 12 as if fully stated herein.

14. On September 13, 2017, Mr. Cook was seen in the pulmonary clinic by Dr. Marwan A. Odeesh ("Dr. Odeesh") and/or Dr. Qasim Mirza.

15. After reviewing Mr. Cook's current pulmonary status, Dr. Odeesh recommended lung cancer screening and ordered a CT scan for that purpose.

16. On October 25, 2017, Mr. Cook was seen in the primary care clinic by Dr. Rafael Mario Sanchez ("Dr. Sanchez").

17. Dr. Sanchez agreed to order a motorized scooter consult for Mr. Cook's complaints of back pain but did not further investigate Mr. Cook's complaints.

18. Mr. Cook returned to the pulmonary clinic on January 3, 2018, at which time he complained of increasing shortness of breath.

19. Mr. Cook was seen on this occasion by Dr. Awais Javed ("Dr. Javed"), while Dr. Muhammad K. Zaman, the Chief of Pulmonary-Critical Care Medicine, co-signed the note.

20. The CT scan ordered by Dr. Odeesh in September 2017 had not yet been performed.

21. Dr. Javed ordered a CT scan to evaluate the patient's dyspnea complaints.

22. On February 10, 2018, Mr. Cook underwent a CT scan of the chest.

23. Dr. Richard Hammer ("Dr. Hammer") was the interpreting radiologist.

24. Dr. Hammer noted very severe emphysema and interstitial lung disease with more severe involvement in the left lung than the right.

25. Dr. Hammer also noted that there were some calcified lymph nodes in the left hilum.

26. Dr. Hammer further noted that there were no masses or areas of consolidation.

27. On April 25, 2018, Mr. Cook returned to Dr. Sanchez.

28. By this time, Mr. Cook's back pain had become quite severe and he was having difficulty ambulating, sleeping, and performing activities of daily living as a result.

29. Dr. Sanchez did not order any imaging studies or other tests to evaluate Mr. Cook's severe back pain.

30. Dr. Sanchez prescribed naproxen, a nonsteroidal anti-inflammatory medication, for "painful joints and back."

31. On May 16, 2018, Mr. Cook underwent another CT scan.

32. Dr. Lee C. Holt ("Dr. Holt") was the interpreting radiologist.

33. Dr. Holt compared the May 16, 2018 imaging to the February 10, 2018 imaging interpreted by Dr. Hammer.

34. Dr. Holt noted, "[t]here are persistent masslike areas of consolidation in the right upper lobe…"

35. Dr. Holt noted that there was one mass measuring approximately 2.8 x 5.3 cm, and one measuring 1.8 x 2.6 cm.

36. Dr. Holt noted that these masslike areas *had not significantly changed* compared to the referenced exam.

37. Dr. Holt recommended that a bronchoscopy be performed to determine if these unchanged masslike areas of consolidation were malignant.

38. None of Mr. Cook's care providers ordered a bronchoscopy or any further evaluation of the masslike areas in his lungs.

39. On September 24, 2018, Mr. Cook was admitted to the Memphis VAMC for back pain, rib pain, and severe fatigue.

40. He was found to be severely anemic.

41. On September 27, 2018, Mr. Cook underwent a chest x-ray.

42. The September 27, 2018 x-ray noted that there remained chronic interstitial lung disease and a masslike density in the right suprahilar region for which malignancy could not be excluded.

43. The notes for the September 27, 2018 radiology report also note that a bronchoscopy had been recommended but had not been performed.

44. An EGD performed on Mr. Cook showed duodenitis, two ulcers in the prepyloric region, and a hiatal hernia.

45. Again, no bronchoscopy was ordered or performed.

46. Instead, Mr. Cook was treated for suspected pneumonia with antibiotics.

47. Mr. Cook was discharged home on October 4, 2018.

48. On October 12, 2018, Mr. Cook again presented to Dr. Sanchez in the primary care clinic.

49. Mr. Cook again complained to Dr. Sanchez of severe, intractable back pain, as well as extreme fatigue and weakness.

50. Dr. Sanchez failed to properly document Mr. Cook's complaints.

51. Dr. Sanchez failed to prescribe appropriate pain medication.

52. Dr. Sanchez also failed to note that Mr. Cook was wheelchair bound at this visit because of the severity of his pain.

53. On October 16, 2018, Mr. Cook presented to Michael B. Gookin, RN ("Mr. Gookin") in the primary care clinic.

54. Mr. Gookin noted that a pain clinic consult had been ordered.

55. However, the location of the pain clinic was 130 miles away.

56. Mr. Gookin provided the family with a telephone number to TriWest and informed them he would forward the request for a pain clinic in Jackson or Paris, Tennessee to be closer to Mr. Cook.

57. On October 16, 2018, Mr. Cook and his daughter were seen by a VA social worker, Kimberly D. Shelton, MSW, LCSW ("Ms. Shelton").

58. Ms. Shelton noted that Mr. Cook's daughter expressed her frustrations regarding her father's multiple appointments and the failure of his primary care provider to refill his pain medication.

59. On October 25, 2018, Mr. Cook sent the following electronic message to the VA:

*I am in tremendous pain and have run out of my medication. I asked for help from my primary care physician and he did not help. He told me I had to see pain management for help with that medication. My meds ran out this morning and pain management can't see me until 11/27/2018. Please help me. I do not know who else to reach out to.*

60. Mr. Cook sent a second message on October 27, 2018, as follows:

*My primary care physician was asked to renew til my pain management appt. and he would not. Spoke to social worker about it and she said she went and spoke with him, same answer, she brought back a change of primary care team form that I did not ask for, so I assume the Dr. doesn't want to help me or she felt he should help but she can't tell him help. Also, my prescription was 120 pills at 1 pill every 4 hours per the instructions on the bottle is a 120 day supply. I have contacted patient advocates 2 times with no response. I really need to speak with someone for help with my issue.*

61. On October 28, 2018, Mr. Cook presented to the Memphis VAMC Emergency Department ("ED") complaining of severe, intractable pain.

62. CT scans of the spine and pelvis were ordered.

63. The CT of the lumber spine showed an extensive pathologic compression fracture of the L4 vertebral body with soft tissue extending into the spinal canal and causing severe spinal stenosis.

64. The scan further noted that this was likely representative of an underlying malignancy and was likely metastatic.

65. The CT of the pelvis showed a lytic lesion within the anterior aspect of the left-sided femoral greater trochanter, likely representative of a metastatic deposit.

66. The results of the CT scans were not shared with Mr. Cook prior to his discharge, so he was recalled to the ED and admitted for further evaluation.

67. On October 29, 2018, a CT of the chest revealed increased size of the right upper lobe mass consistent with a primary pulmonary neoplasm associated with mediastinal adenopathy and osseous metastases.

68. On that same day, a CT of the cervical, thoracic, and lumbar spine showed a pathological burst fracture LR with possible spinal stenosis, and a second 3 cm tumor involving the ala of the sacrum mainly involving S1 with destruction of the anterior cortical portion.

69. This lumbar CT also noted that the second tumor and injury to the sacrum was not described on the previous CT.

70. On October 29, 2018, a CT of the head was performed which showed a 17 mm lesion of the left frontal lobe with associated area of 3 cm of vasogenic edema, and a 5 mm cortical lesion on the right parietal lobe.

71. During this hospital stay, Mr. Cook was seen by neurosurgery, who recommended a TLSO brace for the L4 compression fracture, as well as dexamethasone to prevent worsening intracranial edema.

72. Oncology and radiation oncology also consulted for "presumed metastatic cancer (likely lung primary)," and empiric radiation was begun on November 1, 2018.

73. Pulmonology was also consulted, and care providers noted that "patient had a previous CT in 5/2018 that showed a suspicious lung mass in the RUL…"

74. At this admission, care providers noted that Mr. Cook's pain was severe.

75. He was initially treated with Lortab by mouth and Dilaudid via IV for breakthrough pain.

76. On day two, he was administered Oxycodone twice a day, and Percocet every three hours for breakthrough pain.

77. Mr. Cook was transferred to palliative care on November 2, 2018.

78. On November 5, 2018, Mr. Cook was transferred to St. Francis Hospital for a CT myelogram and a sacral bone biopsy.

79. During transport, his pain was uncontrolled.

80. On November 16, 2018, Mr. Cook underwent a CT-guided biopsy of the right anterior rib mass at the Memphis VAMC.

81. Results from this biopsy and the biopsy performed at St. Francis Hospital both favored a diagnosis of a lung cancer primary with metastatic disease in his bones and brain.

82. Mr. Cook underwent radiation treatments on November 20, 2018 and was discharged home on November 21, 2018 with hospice services.

83. On November 23, 2018, Mr. Gookin called Mr. Cook's home to conduct a post-discharge follow-up.

84. Mr. Gookin spoke with Mr. Cook's daughter, who declined to allow Mr. Gookin to speak directly with Mr. Cook.

85. Mr. Gookin noted the following statements from Mr. Cook's daughter:

*I have requested a change in provider. He will never see Dr. Sanchez again because he refused to take care of his pain issues. The patient advocate is handling his new provider appointments. He will not be seen by Dr. Sanchez. He did not take care of him and he has stage four cancer that he did nothing about.*

86. On December 7, 2018, Mr. Cook died.

87. Mr. Cook's severe pain, injury, shortened lifespan, and death were a direct and proximate result of the negligent medical care provided by his healthcare providers at the Memphis VAMC.

## **Negligence**

88. Plaintiffs restate and re-allege paragraphs 1 through 87 as if fully stated herein.

89. As a provider of medical services to Mr. Cook, the Memphis VA and its agents, servants, or employees, including but not limited to Drs. Hammer and Sanchez, owed Mr. Cook a duty to provide him medical care consistent with the governing standard of medical care.

90. The agents, servants, or employees of the Memphis VA and its affiliates, including but not limited to Drs. Hammer and Sanchez, while acting within the scope of their employment, violated the applicable standards of medical care in the following respects:

    a. Negligent failure to appropriately investigate the cause or Mr. Cook's pain.

    b. Negligent failure to properly document Mr. Cook's complaints and condition;

    c. Negligent misreading of the February 2018 CT scan;

    d. Negligent failure to provide the recommended bronchoscopy after the May 2018 CT scan;

    e. Negligent delay in diagnosing Mr. Cook's lung cancer;

    f. Negligent delay in diagnosing the spinal injury caused by metastatic cancer;

  g.  Negligent failure to treat Mr. Cook's severe, intractable pain;

  h.  Negligent failure to provide appropriate and timely treatment for Mr. Cook's lung cancer; and

  i.  Any and all other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

91. As a direct and proximate result of the aforementioned negligence of Defendant, Plaintiffs claim the following damages:

  a.  Compensation for Mr. Cook's severe physical pain, mental suffering, anguish, disfigurement, and disability;

  b.  Compensation for all economic damages, including funeral and burial expenses, financial support the decedent would have provided, loss of gifts or benefits Plaintiffs would have expected to receive from decedent, and reasonable value of household services decedent would have provided;

  c.  Compensation for the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support provided by decedent;

  d.  Compensation for the loss or damage that the decedent sustained or incurred before death that the decedent would have been entitled to recover had the decedent lived; and

  e.  Compensation for any other damages sustained by Mr. Cook as a proximate result of the negligence of the Memphis VAMC's employees and/or agents.

WHEREFORE, Plaintiffs request the Court grant judgment in their favor against the Defendant in the amount of Six Million Dollars ($6,000,000.00), together with any other costs as they may be lawfully entitled to recover.

        Respectfully submitted,

        DENISE HENDERSON, RHETT R. COOK, and EMMIE R. JAGER, Individually and on Behalf of the Estate of ROCKY LEE COOK, Deceased

By:    s/Matthew T. May   .
      Matthew T. May (#25547)
      Rosenblum & Reisman, P.C.
      Triad Center III
      6070 Poplar Ave, Suite 550
      Memphis, TN 38119
      (901) 527-9600
      matt@randrfirm.com
      Counsel for Plaintiffs